UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PANN #254048,

       Plaintiff,

v.

JOSEPH HAMMER,

       Defendant.

_____/

Hon. Phillip J. Green

Case No. 1:22-cv-00648

# OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 35, 36). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). For all the reasons discussed herein, Defendant's motion will be denied.

# BACKGROUND

Plaintiff Robert Pann is an inmate currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. The events described below allegedly occurred at the Carson City Correctional Facility in Carson, Michigan. Plaintiff sues Defendant Correctional Officer Hammer in his individual capacity, alleging a First Amendment retaliation claim under 42 U.S.C. § 1983.[1]

---

[1] Plaintiff's 42 U.S.C. §§ 1981 and 1985 claims against officer Hammer were dismissed for failure to state a claim in this Court's October 26, 2022, Opinion. (*See* ECF No. 7).

Plaintiff alleges that, on May 8, 2022, Defendant Hammer called Plaintiff's housing unit to dinner. Plaintiff alleges he asked Defendant why the entire unit was called to dinner, when Defendant ordered two other correctional officers to handcuff Plaintiff and take him to administrative segregation. (Compl., ECF No. 1, PageID.3). Plaintiff alleges he was asking Defendant this question because the decision to call Plaintiff's housing unit to dinner created a "hostile environment" where inmates "were line cutting rather than standing in line." (ECF No. 42, PageID.237).

Five hours later, Plaintiff was released from segregation when Defendant Hammer allegedly promised not to write Plaintiff a misconduct ticket. Plaintiff, however, received a misconduct ticket for "insolence" from Defendant on the following day. (ECF No. 1, PageID.3). Defendant alleges that Plaintiff received this misconduct ticket because he "loudly argued with Hammer" when asking why the unit was called to dinner. (ECF No. 36, PageID.160). Plaintiff, however, alleges that he "quietly and respectfully" posed his question to Defendant. (ECF No. 42, PageID.237).

At the misconduct hearing, Plaintiff was found not guilty of insolence. Plaintiff alleges that the misconduct ticket as well as Defendant's decision to send Plaintiff to administrative segregation were retaliatory. (ECF No. 1, PageID.4).

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party moving for summary judgment can

satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the nonmoving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and… may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-

54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

In his motion for summary judgment, Defendant Hammer argues that Plaintiff cannot establish a compensable First Amendment retaliation claim. Specifically, Defendant alleges that: (1) Plaintiff cannot show that his actions constitute protected conduct under the First Amendment; and (2) Plaintiff cannot establish that his

speech was the "but-for" cause of Defendant placing him in segregation. (ECF No. 36, PageID.161-72). Defendant also asserts a qualified immunity defense, claiming that no violation of a "clearly established" constitutional right occurred. (*Id.* at PageID.172-74).

Plaintiff, on the other hand, alleges that he was airing a verbal grievance to Defendant Hammer, and claims that Defendant's decision to place him in segregation therefore constitutes an adverse action. (ECF No. 42, PageID.236-38). Plaintiff also argues that Defendant lacks a non-retaliatory basis for his actions, and that Plaintiff's protected speech was the "but-for" cause of the alleged retaliation. (*Id.* at PageID.240-41).

I. **First Amendment Retaliation**

Defendant Hammer alleges that Plaintiff cannot establish a First Amendment retaliation claim as a matter of law. To establish a First Amendment retaliation claim, Plaintiff must prove: (1) that he was engaged in protected conduct; (2) that Defendants committed an adverse action against him sufficient to deter a person of ordinary firmness from engaging in the protected activity; and (3) that there is a "but-for" causal connection between the protected conduct and the Defendant's adverse action. *Id.* Moreover, Plaintiff must be able to prove that the exercise of his protected right was a substantial or motivating factor in Defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

A. Protected Activity

With respect to protected activity, Defendant Hammer argues that Plaintiff was not airing a grievance and, even if he was, it was frivolous. (ECF No. 36, PageID.164). Plaintiff alleges that his question constituted protected activity, because he was trying to "resolve a grievable [sic] issue prior to writing a grievance." (ECF No. 42, PageID.237).

Protected activity includes the right to file grievances against prison officials. *Noble v. Schmidt*, 87 F.3d 157, 162 (6th Cir. 1996). Not all grievances constitute protected activity, however. A prisoner's grievance may be frivolous when the underlying grievance itself is *de minimis*. *See Maben v. Thalen*, 887 F.3d 252, 264-65 (6th Cir. 2018) (collecting cases); *Scott v. Kilcherman*, No. 99-1711, 2000 WL 1434456, at *1-2 (6th Cir. Sep. 18, 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus–X v. Love*, No. 98-2211, 2000 WL 712354, at *2-3 (6th Cir. May 22, 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

First, Plaintiff's questions to Defendant concerned a non-frivolous matter. Plaintiff alleges that Defendant's conduct (i.e., calling more than the usual number of housing units to dinner) created an environment where gang members were jumping the queue and exacerbating the potential for a disturbance. (ECF No. 42, PageID.237). Indeed, Defendant notes that "a potentially dangerous or violent

situation developed," and he does not dispute Plaintiff's allegation that there were "five other staff members and probably [sixty] inmates in line." (ECF No. 36, PageID.171). Viewing the evidence in the light most favorable to Plaintiff, the Court cannot find Plaintiff's questions to Defendant to be frivolous.

Moreover, the instant action is distinguishable from cases, such as *Scott* and *Love*, where the courts found certain types of grievances to be frivolous. In *Scott*, an inmate filed a grievance alleging that he was being verbally abused by correctional officers; however, the court held that his grievance was frivolous, because an "inmate has no constitutionally protected right to be free from verbal abuse." *Scott*, 2000 WL 1434456, at *2. Here, unlike in *Scott*, Plaintiff's grievance concerns the right to physical safety while in the state's custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (holding that, under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of inmates."). Further, unlike in *Love*, Defendant's conduct had an adverse impact on Plaintiff. In *Love*, the court found that a grievance complaining of a correctional officer eating at his desk was frivolous, because the officer's behavior "had no adverse impact" on the inmate. *Love*, 2000 WL 712354, at *3. Here, on the other hand, Defendant's complained-of conduct allegedly created a "potentially dangerous or violent situation" placing Plaintiff at risk. (ECF No. 36, PageID.171). Plaintiff's grievance, therefore, was not frivolous or *de minimis*.

Furthermore, the mere fact that Plaintiff did not understand his questions to be a grievance at the time does not change that Plaintiff was "addressing [the] government and asking [the] government to fix what, allegedly, [the] government has

-7-

broken or has failed in its duty to repair." *Holzemer v. City of Memphis*, 621 F.3d 512, 522 (6th Cir. 2010) (emphasis removed) (defining a "grievance" with reference to the First Amendment's Petition Clause); *see also, Maben*, 887 F.3d at 264 (noting that "an inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). Thus, Plaintiff was "trying to resolve a grievable issue" with Defendant when he approached Defendant. (ECF No. 42, PageID.237).

Second, a genuine dispute of material fact exists concerning the manner in which Plaintiff aired his verbal grievance, thus precluding summary judgment. Specifically, Plaintiff alleges that he approached Defendant "quietly and respectfully," while Defendant alleges that Plaintiff "loudly argued with [Defendant]." (*Compare* ECF No. 36, PageID.160 *with* ECF No. 42, PageID.237). The manner in which Plaintiff approached Defendant and the content of the conversation are issues of material fact, as they determine whether Plaintiff's grievance was insolent. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (finding that the plaintiff's comments during his misconduct hearing were insolent and did not constitute protected conduct, because the comments were "insolent" under MDOC policy as well as insulting and derogatory to the hearing officer's authority); *Campbell*, 250 F.3d at 1037 (holding that inmates "cannot exercise [the right to file grievances] in a manner that violates legitimate prison regulations or penological objectives."). A reasonable jury could disagree as to whether Plaintiff's attempt to "resolve a grievable issue" was insolent. Accordingly, summary judgment is precluded because of this outstanding dispute of material fact.

B.    Adverse Action

The standard for determining whether particular conduct constitutes adverse action is "whether it is capable of deterring a person of ordinary firmness from exercising his or her [First Amendment rights]." *Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). Although the effect on the freedom of speech "need not be great in order to be actionable," § 1983 requires injury and "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise…" *Id.* (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). While this standard excludes *de minimis* or inconsequential actions, it is not limited to "egregious retaliatory acts." *Walker v. Brewer*, No. 1:13-cv-349, 2014 WL 1117835, at *2 (W.D. Mich. Mar. 20, 2014.

Here, the parties do not dispute whether Defendant's actions (sending Plaintiff to the segregation unit and issuing him a misconduct ticket) constitute an adverse action. Indeed, "placing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000); *see also*, *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (noting that "restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action."). Accordingly, no reasonable juror could disagree that Defendant's actions here constituted an adverse action.

### C. Causal Connection

Defendant claims that Plaintiff cannot show that his verbal grievance, as opposed to his alleged loud and argumentative behavior, was the "but-for" cause of placing Plaintiff in the segregation unit. (ECF No. 36, PageID.166, 168-69). Defendant further alleges that there was a non-retaliatory basis for his actions, because Plaintiff's "insolent" behavior warranted a misconduct ticket and exacerbated a potentially dangerous or violent situation. (*Id.* at PageID.171-72). Plaintiff, in turn, claims that the temporal proximity between his grievance and Defendant's actions (i.e., sending Plaintiff to segregation and issuing him a misconduct ticket) constitutes "indirect evidence of a causal connection so as to create an inference of retaliatory motive." (ECF No. 42, PageID.239-40).

In the context of trying to defeat the other party's motion for summary judgment, some evidence of retaliatory motive is required: "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a… claim." *Hill*, 630 F.3d at 475 (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)). Circumstantial evidence of an official's retaliatory motive may suffice, including evidence of disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action. *Id.* (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26 (6th Cir. 2010)). Moreover, Plaintiff must be able to prove that the exercise of his protected right was a substantial or motivating factor in Defendant's alleged retaliatory conduct. *Campbell*, 250 F.3d at 1037. Once Plaintiff establishes that his protected


conduct was a motivating factor behind any harm, the burden then shifts to Defendant to show that he would have taken the same action in the absence of protected activity. *King v. Zamiara*, 150 Fed. Appx. 485, 494 (6th Cir. 2005) (citing *Blatter*, 175 F.3d at 399).

    Here, a genuine issue of material fact precludes summary judgment. Whether the trier of fact can reasonably infer that the exercise of Plaintiff's protected right to file grievances was a substantial or motivating factor in Defendant's alleged retaliatory conduct depends on the manner in which Plaintiff exercised his right. Specifically, the temporal proximity between Plaintiff's approaching Defendant and Defendant's alleged retaliatory actions creates a strong inference from which the jury could reasonably conclude that Defendant sent Plaintiff to segregation based on their interaction. Whether there was a non-retaliatory basis for Defendant's actions, however, depends on whether Plaintiff approached him in a loud and argumentative manner. If Plaintiff indeed approached Defendant in a loud and argumentative manner, given the fact that the cafeteria was understaffed and crowded with inmates, a reasonable jury could conclude that Defendant had a non-retaliatory basis for his actions. If Plaintiff approached Defendant quietly and respectfully, however, then no reasonable jury could conclude that Plaintiff's manner, as opposed to his grievance, warranted Defendant issuing him a misconduct ticket and placing him in segregation. In other words, if Plaintiff approached Defendant quietly and respectfully, a reasonable trier of fact would conclude that it was Plaintiff's verbal

grievance which caused Defendant to issue him a misconduct ticket and place him in segregation.

Accordingly, because genuine disputes of material fact exist as to: (1) whether Plaintiff's conduct was insolent and therefore unprotected conduct; (2) whether Plaintiff's conduct was a substantial or motivating factor in Defendant's alleged retaliatory actions; and (3) whether Defendant had a non-retaliatory basis for his actions, summary judgment is precluded.

## II. Qualified Immunity

Defendant Hammer also argues that he is entitled to qualified immunity, because Plaintiff's constitutional rights were not violated. (ECF No. 36, PageID.172-74). Plaintiff, in turn, identifies case law wherein the Court of Appeals held that "a reasonable prison officer would have been aware that issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's exercise of his First Amendment rights could give rise to constitutional liability." (ECF No. 42, PageID.242) (quoting *Maben*, 887 F.3d at 269).

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated. *Id.* When government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).

For a right to be clearly established there must exist "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point."  *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (citation omitted).  Court decisions examining matters at a "high level of generality" do not constitute clearly established law because such "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Id.* (citation omitted).  The plaintiff need not locate authority in which "the very action in question has previously been held unlawful," but "in light of pre-existing law the unlawfulness [of the defendant's actions] must be apparent."  *Id.* (citation omitted).  This does not require the plaintiff to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff "to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'"  *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *al-Kidd*, 563 U.S. at 741).

Here, it is possible that no constitutional violation occurred. As discussed above, however, genuine issues of material fact preclude summary judgment on this issue at this time. In addition, a "reasonable prison officer would have been aware that issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's exercise of his First Amendment rights could give rise to constitutional liability." *Maben*, 887 F.3d at 270. Sending an inmate to segregation in retaliation to that prisoner's filing of grievances also violates constitutional provisions. *See Blatter*, 175 F.3d at 398 (holding that "an action comparable to transfer to administrative segregation would certainly be adverse.").

Because qualified immunity's applicability turns on a question of material fact, Defendant's motion for summary judgment will be denied.

## CONCLUSION

For the reasons articulated herein, Defendant's Motion for Summary Judgment (ECF No. 35) is hereby **DENIED**.

Date: March 31, 2025  /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge